## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| NATIONWIDE MUTUAL INSURANCE COMPANY, f/k/a FARMLAND MUTUAL INSURANCE COMPANY, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. _____ |
| GFG INLAND ELEVATOR & GRAIN, LLC<br>Serve: Registered Agent,<br>BC Agent Services, Inc.<br>3500 One Kansas City Place,<br>1200 Main Street,<br>Kansas City, MO 64105 | ) ) ) ) ) ) ) ) | |
| and | ) ) | |
| INGREDION INCORPORATED<br>Serve: Registered Agent<br>The Corporation Company, Inc.<br>112 S.W.7th St., Ste. 3C<br>Topeka, KS 66603 | ) ) ) ) ) ) | |
| Defendants. | ) | |

## **COMPLAINT FOR DECLARATORY RELIEF**

Plaintiff Nationwide Mutual Insurance Company, f/k/a Farmland Mutual Insurance Company, hereby submits this Complaint for Declaratory Relief pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57 as follows:

## **THE PARTIES**

1. Plaintiff Nationwide Mutual Insurance Company, f/k/a Farmland Mutual Insurance Company, ("Nationwide") is an insurance company formed in the state of Ohio with its principal place of business in Columbus, Ohio.

2. Defendant GFG Inland Elevator & Grain LLC ("Gage") is a limited liability company formed in the State of Missouri. Service of process of Gage may be obtained by service of its registered agent, BC Agent Services, Inc., at 3500 One Kansas City Place, 1200 Main Street, Kansas City, MO 64105.

3. Defendant Ingredion Incorporated ("Ingredion") is a corporation registered in the State of Delaware with its principal place of business in the State of Kansas. Service of process of Ingredion may be obtained by service of its registered agent, The Corporation Company, Inc., at 112 S.W. 7th Street, Olathe, KS 66062.

4. Upon information and belief, the members of Gage are all residents of the State of Missouri.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction of this dispute under 28 U.S.C. § 1332 because there is complete diversity of citizenship between plaintiff and defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. This Court has personal jurisdiction over defendant Gage in that it is a Missouri company domiciled in the State of Missouri.

7. This Court has personal jurisdiction over defendant Ingredion in that it conducts business operations in the State of Missouri.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred within the State of Missouri and involve the interpretation of a contract of insurance issued to Gage, a limited liability company domiciled in the State of Missouri.

# THE UNDERLYING LAWSUIT

9. On or about June 23, 2020, Ingredion filed a Complaint against Gage in the United States District Court for the District of Kansas, case number 2:20-cv-02309 (hereafter the "Underlying Lawsuit"). A copy of the Complaint filed in the Underlying Lawsuit is attached as **Exhibit A** and incorporated by reference.

10. Ingredion's Complaint alleges that Ingredion is a "global ingredients solution company that produces sweeteners, starches, nutrition ingredients, and biomaterials from various crops, including corn."

11. Ingredion's Complaint alleges that Ingredion "operates a plant in North Kansas City, Missouri ("North Kansas City Plant") that uses a variety of raw materials, including corn, to manufacture Ingredion's products.

12. Ingredion's Complaint alleges that Gage operates a grain elevator at 501 S. Coy, Kansas City, Wyandotte County, Kansas that is licensed as a grain storage warehouse through the United States Department of Agriculture and as a Class 1 grain dealer by the Kansas Department of Agriculture.

13. Ingredion's Complaint alleges that on July 1, 2014, Ingredion and Gage entered into a "Put Through and Storage Agreement" as amended. The Complaint alleges that pursuant to the "Put Through and Storage Agreement":

   a. Gage agreed to receive, store and load out corn for Ingredion at the grain elevator at 501 S. Coy, Kansas City, Wyandotte County, Kansas;

   b. Ingredion was to retain title to all corn delivered;

   c. Gage agreed to bear the risk of loss from the time the corn is unloaded to Gage's facility until load out;

3
Case 4:20-cv-00977-SRB   Document 1   Filed 12/14/20   Page 3 of 18

d.  Ingredion agreed to pay Gage at a set rate for each bushel of corn Gage unloaded for storage and loaded out for delivery;

e.  Gage agreed to remit to Ingredion daily unload tickets that included information regarding the weight or bushels delivered;

f.  Ingredion agreed to pay Gage a set rate per bushel per month for all Ingredion corn stored by Gage;

g.  Ingredion would store both Waxy corn and Amylose corn at Gage's elevator;

h.  Gage agreed to preserve the integrity of the commercial corn received from Ingredion by handling it separately and keeping it segregated and "Identity Preserved" from other corn and other commodities;

i.  Gage agreed to store Ingredion's corn separately from other goods and to identify the corn solely as Ingredion's;

j.  Gage agreed to provide proper storage, security, handling, accounting for, and to provide protection from the elements, contamination or adulteration of Ingredion's corn;

k.  Gage agreed to provide its services in a professional and workmanlike manner in accordance with accepted industry standards;

l.  Gage agreed that any quality loss from the inbound corn received by Gage that was subsequently unloaded and received by Ingredion would be the responsibility of Gage;

m.  Gage agreed to operate its business in compliance with all applicable federal, state and local laws, codes, ordinances, regulations, standards, rules, requirements and orders.

14. The Complaint alleges that Gage invoiced Ingredion for storage charges once per month based on a daily bushel amount.

15. The Complaint alleges that in order to use the corn stored by Gage in food ingredient products, Ingredion required its corn to be segregated so that it was not commingled with other corn or crops.

16. The Complaint alleges that in or around November 2019, Ingredion conducted a quality assurance audit of Waxy corn stores that had been unloaded and received by Ingredion from Gage and determined that it was contaminated with Amylose corn.

17. The Complaint alleges that Ingredion conducted further testing of the Waxy corn stored at Gage and determined that it was contaminated by Amylose corn and soybeans.

18. The Complaint alleges that Ingredion subsequently determined that Gage was not storing an amount of Waxy corn for Ingredion consistent with the amounts reflected on delivery tickets, Ingredion's internal inventory records, or Gage's storage invoices.

## THE INSURANCE POLICY

19. Nationwide issued Commercial General Liability Policy CPP135636A to GFG Services, LLC and GFG Inland Elevator and Grain, LLC (hereafter "the General Liability Policy"). A copy of the General Liability Policy is attached to this Complaint for Declaratory Relief as **Exhibit B** and incorporated by reference.

20. The General Liability Policy identifies a policy period from December 1, 2018 to December 1, 2019.

21. Nationwide issued Commercial Liability Umbrella Policy CU135636A to GFG Services, LLC and GFG Inland Elevator and Grain, LLC (hereafter "the Umbrella Policy"). A copy of the Umbrella Policy is attached to this Complaint for Declaratory Relief as **Exhibit C** and incorporated by reference.

22. The Umbrella Policy identifies a policy period from December 1, 2018 to December 1, 2019.

23. The General Liability Policy contains a section COMMERCIAL GENERAL LIABILITY FORM, which states under SECTION 1 - COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY, under Paragraph 1. Insuring agreement, "We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damages" to which this insurance applies."

24. The Umbrella Policy contains a section COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM, which states under SECTION 1 - COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY, under Paragraph 1. Insuring agreement: subparagraph (a) "We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damages" to which this insurance applies."

25. The Umbrella Policy contains a section COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM, which states under SECTION 1 - COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY, under Paragraph 1. Insuring agreement: subparagraph (c) "This insurance applies to "bodily injury" and "property damage" only if: "(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"."

26. The General Liability Policy contains an endorsement entitled SEED MERCHANTS - COVERAGE FOR ERRONEOUS DELIVERY OR MIXTURE AND RESULTING FAILURE OF SEED TO GERMINATE which modifies insurance provided under the COMMERCIAL GENERAL LIABILITY COVERAGE FORM and adds language to the

coverage form stating that damages because of property damage" include loss resulting from (a) The erroneous delivery of seed, which includes: (1) The failure to deliver seed; (2) The delivery of wrong seed; or (3) The delivery of seed at the wrong time or season; (b) An error in mechanical mixture of seed; or (c) The failure of seed to germinate if this failure is caused by: (1) The delivery of wrong seed; (2) The delivery of seed at the wrong time or season; or (3) An error in mechanical mixture of seed."

27. The Umbrella Policy contains an endorsement entitled SEED MERCHANTS - COVERAGE FOR ERRONEOUS DELIVERY OR MIXTURE AND RESULTING FAILURE OF SEED TO GERMINATE which modifies insurance provided under the COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM and adds language to the coverage form stating that damages because of "property damage" include loss resulting from (a) The erroneous delivery of seed, which includes: (1) The failure to deliver seed; (2) The delivery of wrong seed; or (3) The delivery of seed at the wrong time or season; (b) An error in mechanical mixture of seed; or (c) The failure of seed to germinate if this failure is caused by: (1) The delivery of wrong seed; (2) The delivery of seed at the wrong time or season; or (3) An error in mechanical mixture of seed."

28. Both the General Liability Policy and the Umbrella Policy contain a SECTION V-DEFINITIONS, which defines the term "property damage" to mean (a) physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or (b) Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it."

29.     Both the General Liability Policy and the Umbrella Policy contain a SECTION V-DEFINITIONS, which defines the term "Occurrence" is defined to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

30.     Both the General Liability Policy and the Umbrella Policy contain a SECTION V-DEFINITIONS, which defines the term "Impaired property" to mean "tangible property, other than "your product" or "your work", that cannot be used or is less useful because (a) It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or (b) You have failed to fulfill the terms of a contract or agreement; if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work", or your fulfilling the terms of the contract or agreement."

31.     Both the General Liability Policy and the Umbrella Policy contain a SECTION V-DEFINITIONS, which defines the term "Your product" to mean "(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by: (a) You; (b) Others trading under your name; or (c) A person or organization whose business or assets you have acquired; and (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products." Both the General Liability Policy and the Umbrella Policy further define "Your product" to include "(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and (2) The providing of or failure to provide warnings or instructions."

32.     Both the General Liability Policy and the Umbrella Policy contain a SECTION V-DEFINITIONS, which defines the term "Your work" to mean "(1) Work or operations performed by you or on your behalf; and (2) Materials, parts or equipment furnished in connection with such work or operations." Both the General Liability Policy and the Umbrella Policy further define

"your work" to include "(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and (2) The providing of or failure to provide warnings or instructions."

33. Both the General Liability Policy and the Umbrella Policy contain a SECTION V- DEFINITIONS, which defines the term "Products-completed operations hazard" to include "all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except: (1) Products that are still in your physical possession; or (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times: (a) When all of the work called for in your contract has been completed. (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site. (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project."

34. The General Liability Policy contains a section COMMERCIAL GENERAL LIABILITY FORM, which states under SECTION 1 -COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY, under Paragraph 2. Exclusions, Expected or Intended Injury, "This insurance does not apply to: "Bodily injury" or "property damage" expected or intended from the standpoint of the insured."

35. The Umbrella Policy contains a section COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM, which states under SECTION 1 -COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY, under Paragraph 2. Exclusions, Expected or Intended Injury, "This insurance does not apply to: "Bodily injury" or "property damage" expected or intended from the standpoint of the insured."

36. The General Liability Policy contains a section COMMERCIAL GENERAL LIABILITY FORM, which states under SECTION 1 -COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY, under Paragraph 2. Exclusions, Contractual Liability, "This insurance does not apply to: "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement."

37. The Umbrella Policy contains a section COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM, which states under SECTION 1 -COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY, under Paragraph 2. Exclusions, Contractual Liability, "This insurance does not apply to: "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement."

38. The General Liability Policy contains a section COMMERCIAL GENERAL LIABILITY FORM, which states under SECTION 1 -COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY, under Paragraph 2. Exclusions, Damage to Property, "This insurance does not apply to: "Property damage" to: (1) Property loaned to you; (2) Personal property in the care, custody or control of the insured;… (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it."

39. The Umbrella Policy contains a section COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM, which states under SECTION 1 -COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY, under Paragraph 2. Exclusions, Damage to Property, "This insurance does not apply to: "Property

damage" to: (1) Property loaned to you; (2) Personal property in the care, custody or control of the insured;… (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it."

40. The General Liability Policy contains a section COMMERCIAL GENERAL LIABILITY FORM, which states under SECTION 1 -COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY, under Paragraph 2. Exclusions, Damage to Your Product, "This insurance does not apply to: "Property damage" to "your product" arising out of it or any part of it."

41. The Umbrella Policy contains a section COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM, which states under SECTION 1 -COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY, under Paragraph 2. Exclusions, Damage to Your Product, "This insurance does not apply to: "Property damage" to "your product" arising out of it or any part of it."

42. The General Liability Policy contains a section COMMERCIAL GENERAL LIABILITY FORM, which states under SECTION 1 -COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY, under Paragraph 2. Exclusions, Damage to Your Work, "This insurance does not apply to: "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

43. The Umbrella Policy contains a section COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM, which states under SECTION 1 -COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY, under Paragraph 2. Exclusions, Damage to Your Work, "This insurance does not apply to: "Property

damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

44. The General Liability Policy contains a section COMMERCIAL GENERAL LIABILITY FORM, which states under SECTION 1 -COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY, under Paragraph 2. Exclusions, Damage To Impaired Property or Property Not Physically Injured, "This insurance does not apply to: "Property damage" to "impaired property" or property that has not been physically injured, arising out of: (1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms."

45. The Umbrella Policy contains a section COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM, which states under SECTION 1 -COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY, under Paragraph 2. Exclusions, Damage To Impaired Property or Property Not Physically Injured, "This insurance does not apply to: "Property damage" to "impaired property" or property that has not been physically injured, arising out of: (1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms."

46. The General Liability Policy contains a section COMMERCIAL GENERAL LIABILITY FORM, which states under SECTION 1 -COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY, under Paragraph 2. Exclusions, Recall Of Products, Work Or Impaired Property, "This insurance does not apply to: Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall,

inspection, repair, replacement, adjustment, removal or disposal of: (1) "Your product"; (2) "Your work"; or (3) "Impaired property"; if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it."

47. The Umbrella Policy contains a section COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM, which states under SECTION 1 -COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY, under Paragraph 2. Exclusions, Recall Of Products, Work Or Impaired Property, "This insurance does not apply to: Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of: (1) "Your product"; (2) "Your work"; or (3) "Impaired property"; if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it."

48. The General Liability Policy contains an endorsement entitled SEED MERCHANTS - COVERAGE FOR ERRONEOUS DELIVERY OR MIXTURE AND RESULTING FAILURE OF SEED TO GERMINATE which modifies insurance provided under the COMMERCIAL GENERAL LIABILITY COVERAGE FORM and states that the exclusion regarding Damage to Impaired Property or Property Not Physically injured does not apply to any "property damage" described in Paragraph A of the endorsement.

49. The Umbrella Policy contains an endorsement entitled SEED MERCHANTS - COVERAGE FOR ERRONEOUS DELIVERY OR MIXTURE AND RESULTING FAILURE OF SEED TO GERMINATE which modifies insurance provided under the COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM and states that the exclusion regarding Damage

to Impaired Property or Property Not Physically injured does not apply to any "property damage" described in Paragraph A of the endorsement.

## REQUEST FOR DECLARATORY JUDGMENT

50. Nationwide has been defending Gage in the Underlying Lawsuit subject to a reservation of the right to deny coverage under the General Liability Policy, the Umbrella Policy, or both.

51. Nationwide has no duty to defend or indemnify Gage as the Complaint fails to allege any "property damage" as that term as defined in Section V-Definitions, Paragraph 17 of the General Liability Policy and the Umbrella Policy or Paragraph A of the Seed Merchants endorsement.

52. Nationwide has no duty to defend or indemnify Gage as the Complaint fails to allege an "occurrence" as that term as defined in in Section V-Definitions, Paragraph 13 of the General Liability Policy and the Umbrella Policy.

53. In the event that the Court determines that the Complaint alleges property damage caused by an occurrence, Nationwide has no duty to defend or indemnify Gage pursuant to Exclusion (a) of the General Liability Policy and the Umbrella Policy as the property damage alleged in the Complaint was expected or intended by Gage.

54. In the event that the Court determines that the Complaint alleges property damage caused by an occurrence, Nationwide has no duty to defend or indemnify Gage pursuant to Exclusion (b) of the General Liability Policy and the Umbrella Policy as Gage's obligation for damages is solely by reason of the assumption of liability in a contract or agreement.

55. In the event that the Court determines that the Complaint alleges property damage caused by an occurrence, Nationwide has no duty to defend or indemnify Gage pursuant to

Exclusion (j)(3) of the General Liability Policy and Exclusion (m)(3) of the Umbrella Policy as the property damage was to property loaned to Gage.

56. In the event that the Court determines that the Complaint alleges property damage caused by an occurrence, Nationwide has no duty to defend or indemnify Gage pursuant to Exclusion (j)(4) of the General Liability Policy and Exclusion (m)(4) of the Umbrella Policy as the property damage was to personal property in the care custody or control of Gage.

57. In the event that the Court determines that the Complaint alleges property damage caused by an occurrence, Nationwide has no duty to defend or indemnify Gage pursuant to Exclusion (j)(6) of the General Liability Policy and Exclusion (m)(6) the Umbrella Policy as the property damage was to property that needed to be restored, repaired or replaced because Gage incorrectly performed its work on it and the work is not included in the products-completed operations hazard.

58. In the event that the Court determines that the Complaint alleges property damage caused by an occurrence, Nationwide has no duty to defend or indemnify Gage pursuant to Exclusion (k) of the General Liability Policy and Exclusion (n) of the Umbrella Policy as the property damage was to Gage's product.

59. In the event that the Court determines that the Complaint alleges property damage caused by an occurrence, Nationwide has no duty to defend or indemnify Gage pursuant to Exclusion (l) of the General Liability Policy and Exclusion (o) of the Umbrella Policy as the property damage was to Gage's work and included in the products-completed operations hazard.

60. In the event that the Court determines that the Complaint alleges property damage caused by an occurrence, Nationwide has no duty to defend or indemnify Gage pursuant to Exclusion (m)(1) of the General Liability Policy and Exclusion (p)(1) of the Umbrella Policy as

the property damage was merely an impairment to the property and not a physical injury, resulting from a defect, deficiency, or inadequacy of Gage's product or work and is not within the type of damages described in Paragraph A of the Seed Merchants endorsement.

61. In the event that the Court determines that the Complaint alleges property damage caused by an occurrence, Nationwide has no duty to defend or indemnify Gage pursuant to Exclusion (m)(2) of the General Liability Policy and Exclusion (p)(2) of the Umbrella Policy as the property damage was merely an impairment to the property and not a physical injury, resulting from a delay or failure of Gage or someone acting on their behalf to perform a contract or agreement in accordance with its terms and is not within the type of damages described in Paragraph A of the Seed Merchants endorsement.

62. In the event that the Court determines that the Complaint alleges property damage caused by an occurrence, Nationwide has no duty to defend or indemnify Gage pursuant to Exclusion (n) of the General Liability Policy and Exclusion (q) of the Umbrella Policy as the property damage is damages claimed for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of Gage's property, Gage's work, or impaired property.

63. Therefore, Nationwide is not obligated to defend or indemnify Gage for any liability it may incur to Ingredion in the Underlying Lawsuit.

64. Under 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, this Court has the power to resolve questions of construction and legal relations between Nationwide and Gage concerning the coverage available under the General Liability Policy, the Umbrella Policy, or both for the claims asserted by Ingredion against Gage in the Underlying Lawsuit.

65. The question regarding whether Nationwide's General Liability Policy or Umbrella Policy provide coverage for the claims and damages alleged in the Underlying Lawsuit involves an actual justiciable controversy ripe for consideration by this Court, making declaratory relief proper.

66. Therefore, Nationwide seeks a declaratory judgment that it has no duty to defend or indemnify Gage against any of the claims or allegations alleged against it in the Underlying Lawsuit.

WHEREFORE, Plaintiff Nationwide Mutual Insurance Company, f/k/a Farmland Mutual Insurance Company hereby asks this Court for declaratory judgment and other relief as follows:

a. Finding that the General Liability Policy and Umbrella Policy that Nationwide Mutual Insurance Company, f/k/a Farmland Mutual Insurance Company issued to GFG Services, LLC and GFG Inland Elevator and Grain, LLC does not provide coverage for the claims alleged by Ingredion against GFG Inland Elevator and Grain, LLC in the Underlying Lawsuit;

b. Finding that Plaintiff Nationwide Mutual Insurance Company, f/k/a Farmland Mutual Insurance Company has no duty to defend GFG Inland Elevator and Grain, LLC in the Underlying Lawsuit;

c. Finding that Plaintiff Nationwide Mutual Insurance Company, f/k/a Farmland Mutual Insurance Company has no duty to indemnify GFG Inland Elevator and Grain, LLC in the Underlying Lawsuit;

d. Awarding Plaintiff Nationwide Mutual Insurance Company, f/k/a Farmland Mutual Insurance Company its costs; and

e. Awarding Plaintiff Nationwide Mutual Insurance Company, f/k/a Farmland Mutual Insurance Company all other further relief this Court deems just and equitable.

Respectfully submitted,

**FOLAND, WICKENS, ROPER, HOFER & CRAWFORD, P.C.**

*/s/ Wm. Clayton Crawford*

Wm. Clayton Crawford   MO#41619
Jordon T. Stanley   MO #57027
1200 Main Street, Suite 2200
Kansas City, MO 64105
(816) 472-7474
(816) 472-6262 (fax)
ccrawford@fwpclaw.com
jstanley@fwpclaw.com
*Attorneys for Plaintiff Nationwide Mutual Insurance Company f/k/a Farmland Mutual Insurance Company*